UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHON KIM CARLSON,<br><br>    Plaintiff,<br><br> v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No.: 1:16-cv-01459 - JLT<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT, COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF SHON KIM CARLSON |

   Shon Kim Carlson asserts she is entitled to a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating the medical record and determining Plaintiff's residual functional capacity through her date last insured. Because the ALJ applied the proper legal standards, the administrative decision is **AFFIRMED**.

## **BACKGROUND**

   On March 27, 2013, Plaintiff filed an application for benefits, in which she alleged disability beginning December 31, 2012. (*See* Doc. 10-6 at 2) The Social Security Administration denied her application at the initial level and upon reconsideration. (*See generally* Doc. 10-4; Doc. 10-3 at 13) Plaintiff requested a hearing and testified before an ALJ on December 18, 2014. (Doc. 10-3 at 13, 29) The ALJ determined Plaintiff was not disabled through her date last insured and issued an order denying benefits on April 3, 2015. (*Id.* at 13-23) Plaintiff filed a request for review of the decision

with the Appeals Council, which denied the request on July 29, 2016. (*Id.* at 2-4) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## **STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## **DISABILITY BENEFITS**

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

# ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

## A.     Relevant Medical Evidence

On February 14, 2013, Plaintiff was admitted to Mark Twain St. Joseph's Hospital with "[l]abia majora abscess status post incision and drainage, with pubic area cellulitis extending to the abdominal wall." (Doc. 10-12 at 65) Plaintiff reported that she "developed some boil type of change over a week ago after shaving the area," and the pain spread to the abdominal wall. (*Id.*) Due to the area of the wound, the surgeon at Mark Twain did not "want to proceed with the surgical debridement without having a gynecologist on board." (*Id.*)

Plaintiff was transferred to Mercy Hospital on February 16, 2013. (Doc. 10-14 at 76) Dr. Ben Hunt opined Plaintiff appeared to have a "necrotizing soft tissue infection of the perineum." (*Id.* at 77) Dr. Hunt noted Plaintiff would be taken to the operating room that night "for initial debridement," though she would "almost certainly require several other treatments to contain the spreading infection." (*Id.*) In addition, he indicated Plaintiff would be "started on insulin to control her diabetes, which [was] worsened due to the infection, and broad-spectrum antibiotics." (*Id.* at 77)

The next day, Plaintiff reported that "on and off for the past 2 weeks she … had complaint of a left vaginal labial distress and pain," but "her husband's dog recently died and she did not want to upset her husband by drawing attention to herself and decided to let this go," until she went to the hospital on February 14. (Doc. 10-14 at 72) Reviewing Plaintiff's records, Dr. Faryal Michaud opined Plaintiff "actually had sepsis and [diabetic ketoacidosis]" when she was admitted at Mark Twain. (*Id.*) Dr. Michaud noted Plaintiff's pain was "out of proportion to [the] examination," which was a "hallmark of

necrotizing fasciitis." (*Id.* at 74)  Plaintiff had "several surgeries" at Mercy Hospital, after which she was returned to Mark Twain "to continue wound care and antibiotic regimen." (Doc. 10-12 at 4)

On March 22, 2013, Dr. Maria Michnowska examined Plaintiff at Mark Twain and found Plaintiff "had no drainage any more and no swelling." (Doc. 10-12 at 4)  She noted Plaintiff's "diabetes was relatively well-controlled" and directed Plaintiff "to continue with diet and metformin at home." (*Id.* at 5)  Plaintiff was discharged from the hospital with instructions "to establish care with a primary care provider who [would] follow up also on her diabetes." (Doc. 10-12 at 5)

Dr. Jeffrey Sweat and Dr. Hunt examined Plaintiff's wound at follow-up appointments on March 29, 2013.  (Doc. 10-14 at 3, 69)  Dr. Sweat noted he "[r]eviewed incision care with [Plaintiff] who [was] cleansing the folds and incision daily." (*Id.* at 69)  Dr. Sweat found no infection and opined the "incision was overall healing OK." (*Id.*)  Likewise, Dr. Hunt opined Plaintiff was "[d]oing well postoperatively. (*Id.* at 3)

On May 3, 2013, Dr. Sweat again evaluated Plaintiff's wound. (Doc. 10-14 at 68)  Plaintiff reported she had "pulling sensations in her abdomen and pain in her [left] groin from tightness." (*Id.*)  Dr. Sweat noted that he was "unsure how much of her damage/pain … [was] caused by the infection," but he "guess[ed] a decent amount since normally tummy tuck [patients] do not have these problems," and Plaintiff's incision was made in "a tummy tuck style." (*Id.*)  Dr. Sweat opined Plaintiff was "progressing well/ as expected." (*Id.*)

Dr. G. E. Washington performed a psychiatric evaluation on August 2, 2013.  (Doc. 10-14 at 83-87)  Plaintiff said she was "suffering from depression and she [was] always scared." (*Id.* at 83)  She told Dr. Washington that she had been "depressed on and off for most of her life but things became much more severe after the diagnosis with [the] flesh eating disease," necrotizing fasciitis. (*Id.*)  Plaintiff also reported "she live[d] in fear of dying" and did not "know whether she [could] sustain the treatment." (*Id.*)  She stated that she could "dress and bathe herself," "perform household chores, go shopping and cook." (*Id.* at 84)  Dr. Washington noted Plaintiff was "able to understand all test questions" and "comprehended all aspects of the evaluation." (*Id.* at 85)  Dr. Washington opined Plaintiff's "memory was fair" and her "[a]ttention and concentration were good," because Plaintiff "was able to remember three words immediately and two of three words after five minutes" and "recall

4

6 digits forwards and 5 digits backwards." (*Id.*) Dr. Washington diagnosed Plaintiff with anxiety disorder and major depressive disorder, recurrent, moderate, without psychotic features. (*Id.*) Dr. Washington opined Plaintiff was "not limited" with the "[a]bility to understand, remember and carry out simple one or two-step job instructions;" "accept instructions from supervisors;" and "perform work activities without special or additional supervision." (*Id.* at 86-87) In addition, Dr. Washington concluded Plaintiff was "mildly limited" with the ability "to understand, remember, and carry out detailed and complex job instructions;" "relate and interact with co-workers and the public;" maintain concentration, attention, persistence and pace; and "day to day work activities, including attendance and safety." (*Id.* at 86)

Dr. Satish Sharma completed an internal medicine consultation on August 15, 2013. (Doc. 10-14 at 91) Dr. Sharma noted he reviewed medical records that showed Plaintiff "was admitted to the hospital in March 2013 with necrotizing fasciitis of groin and abdominal wall," and "was diagnosed with Group B streptococcus necrotizing soft-tissue infections and ha[d] multiple surgeries including skin flap placement." (*Id.*) Plaintiff told Dr. Sharma that she had decreased vision due to diabetes and "low back pain, which at times radiate[d] to lower extremities," after she fell "several years back." (*Id.* at 91-92) Dr. Sharma examined Plaintiff's eyes, nose, and skin as part of the physical examination. (*Id.* at 93) He noted Plaintiff exhibited "[t]enderness to palpation of [her] lumbar spine and paravertebral region," and "[p]ain on forward flexion at 70°." (*Id.* at 94) Plaintiff had "no swelling, tenderness, increased warmth, or erythemia over any of the joints" in her legs. (*Id.*) Dr. Sharma found Plaintiff's strength was "5/5 in all muscle groups tested in the upper and lower extremities." (*Id.* at 95) In addition, he noted Plaintiff walked "with a normal gait and [did] not use any assistive device to ambulate." (*Id.*) Dr. Sharma also tested Plaintiff's memory, and found she was able to recall "three out of three words immediately and two of three words in five minutes." (*Id.*) Dr. Sharma concluded:

> Based upon today's physical examination and observations, she has limitation in lifting to 10 pounds frequently and 20 pounds occasionally. Standing and walking limited to 6 hours per day with normal breaks. Bending and stooping should be done occasionally. Sitting limited to 6 hours per day. No limitation in holding or feeling objects. No limitation in speech, hearing, or vision.

(*Id.* at 95)

On August 24, 2013, Dr. Pamela Hawkins reviewed the medical record related to Plaintiff's

mental abilities. (Doc. 10-14 at 10-13) She noted Plaintiff "present[ed] with an anxious mood," but had "adequate social interactions." (*Id.* at 13) In addition, Dr. Hawkins found Plaintiff's activities of daily living were "independently completed and limited by physical conditions only." (*Id.*) Dr. Hawkins opined Plaintiff had no restriction of activities of daily living; no difficulties with social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. (*Id.*) Dr. Hawkins concluded Plaintiff's mental impairments were non-severe. (*Id.*)

Dr. L. Pancho completed a physical residual functional capacity of Plaintiff's current abilities on August 27, 2013. (Doc. 10-4 at 14-15) Dr. Pancho opined Plaintiff was able to lift and carry 10 pounds frequently and 20 pounds occasionally, stand and/or walk "[a]bout 6 hours in an 8-hour workday," and sit for "[a]bout 6 hours in an 8-hour workday." (*Id.* at 14) Dr. Pancho indicated Plaintiff could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. (*Id.*) According to Dr. Pancho, Plaintiff should never climb ladders, ropes, or scaffolds. (*Id.*) Dr. Pancho indicated these postural limitations were due to Plaintiff's history of necrotizing fasciitis to her lower abdomen and groin. (*Id.*) Dr. A. Dipsia reviewed the record and agreed with this assessment. (*Id.* at 30)

Dr. Michnowska completed assessments regarding Plaintiff's physical and mental ability to do work-related activities on November 23, 2013. (Doc. 10-16 at 27-29) Dr. Michnowska noted that her treatment contact with Plaintiff began in February 2013, and included "3 hospitalizations." (*Id.* at 27) She noted Plaintiff was "very tearful, anxious," and had "low energy, lack of appetite, very poor concentration, thoughts of guilt and worthlessness (sic), unable to perform regular tasks, [and] unable to take care of her medical problem (diabetes)." (*Id.*) Dr. Michnowska opined Plaintiff had "[n]o useful ability to function" with the ability to follow work rules, deal with work stressors, maintain attention and concentration, and functioning independently. (*Id.*) Dr. Michnowska believed Plaintiff had a "fair" ability to understand, remember, and carry out simple job instructions. (*Id.* at 28) However, she noted Plaintiff was "unable to maintain attention and concentration and it gets worse when she deals with the public," and she had "[f]requent crying spells." (*Id.*) Dr. Michnowska noted Plaintiff had an "onset of problems in December 2012." (*Id.*) In addition, Dr. Michnowska indicated Plaintiff was limited to "less than sedentary work" due to limitations with standing, sitting, and walking. (*Id.* at 29)

6

On February 13, 2014, Dr. Norman Zukowsky reviewed the medical record related to Plaintiff's mental impairments and also concluded Plaintiff's mental impairments were non-severe through her date last insured. (Doc. 10-14 at 30)

**B.      Administrative Hearing Testimony**

Plaintiff appeared at a hearing and testified before an ALJ on December 18, 2014. (Doc. 10-3 at 30) Plaintiff testified that she first felt sick "[r]ight around Thanksgiving" in 2012, but thought she had the flu. (*Id.* at 49, 61) She said she also attributed the aches she felt to her back, because she would "get back aches sometimes that last a while." (*Id.* at 49)

She reported that in December 2012, she "was feeling ill, and … was very upset about telling [her] husband [she] was sick, because his dog was dying and his dog was a lot more important than [Plaintiff]." (Doc. 10-3 at 38) She stated she then asked her husband if they had "leftover antibiotics" because she thought she may have an infection. (*Id.*) Plaintiff said that she took them, but "about a week later… was so sick [she] couldn't get out of bed," and her husband called for an ambulance. (*Id.*)

Plaintiff identified "depression" as the impairment that caused her the most problems. (Doc. 10-3 at 38) She testified that she began taking medication for depression while hospitalized in March 2014. (*Id.* at 40) Plaintiff said she noticed a difference, because she was "sometimes… just in a better mood" and "not hiding." (*Id.*) In addition, Plaintiff said that she had just started taking Paxil and was supposed to begin seeing a psychiatrist the week of the hearing. (*Id.* at 39, 40) Plaintiff said she had been trying to see a psychiatrist since March 2014 but had been unable to do so. (*Id.* at 41)

She reported she first had issues with her back after suffering "a slip and fall back in '97 or '98." (Doc. 10-3 at 41) Plaintiff stated she had spinal surgery and went through physical therapy, but "stopped seeing a doctor about that because they weren't able to do any more for [her]." (*Id.* at 42) Plaintiff said she recently resumed physical therapy, only two days before the hearing. (*Id.*) Plaintiff testified that she also began "a home exercise program," which she had done three times. (*Id.* at 42-43) She reported she was not taking medication for her back pain because she "was kind of afraid to keep taking those strong meds." (*Id.* at 43)

Plaintiff testified that on a typical day, she would "kind of try to stay away from people and the phone," and would "lie in bed a lot because it [felt] better than sitting or standing." (Doc. 10-3 at 46)

She said she also read books and magazines, "whatever somebody gives [her]." (*Id.*)  In addition, Plaintiff reported she watched television "maybe three or four" hours each day, though she did not "pay a lot of attention." (*Id.* at 50)

**C.     The ALJ's Findings**

As an initial matter, the ALJ found Plaintiff "last met the insured status requirements of the Social Security Act on December 31, 2012," which was the date identified as the alleged onset date. (Doc. 10-3 at 15)  Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial activity "during the period of her Alleged Onset Date … of December 31, 2012 through her Date Last Insured … of December 31, 2012." (*Id.*)  Second, the ALJ found Plaintiff had the following severe impairments through her date last insured: degenerative disc disease and diabetes. (*Id.*)  At step three, the ALJ found these impairments did not meet or medically equal a listed impairment. (*Id.* at 14-15)  Next, the ALJ determined:

> [T]hrough the date last insured, the claimant had the Residual Functional Capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) except as limited by the following.  The claimant could, with normal breaks, stand and walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday.  She could not climb ladders, ropes, or scaffolds but could occasionally climb ramps and stairs. The claimant could occasionally balance, stoop, crouch, kneel, and crawl.

(*Id.* at 19)  With this residual functional capacity, the ALJ found Plaintiff "was capable of performing Past Relevant Work as a Travel Agent" through her date last insured. (*Id.* at 22)  The ALJ concluded Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from December 31, 2012, the Alleged Onset Date (AOD), through December 31, 2012, the Date Last Insured." (*Id.*)

**DISCUSSION AND ANALYSIS**

Appealing the ALJ's decision, Plaintiff argues that the ALJ erred at step two of the sequential evaluation, in reviewing the medical evidence, and formulating her residual functional capacity. (Doc. 19 at 3-4)  On the other hand, Defendant argues that substantial evidence supports the ALJ's findings and residual functional capacity. (Doc. 21 at 4-13)

**A.     Step Two Determination**

The inquiry at Step Two is a *de minimus* screening "to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yucket*, 482 U.S. 137, 153-54 (1987)).

8

The purpose is to identify claimants whose medical impairment makes it unlikely they would be disabled even if age, education, and experience are considered. *Bowen*, 482 U.S. at 153 (1987). A claimant must make a "threshold showing" (1) she has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. *Id.* at 146-47; *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c). Thus, the burden of proof is on the claimant to establish a medically determinable severe impairment that significantly limits her physical or mental ability to do basic work activities, or the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(a), 416.921(a).

The ALJ found Plaintiff's severe impairments through her date last insured included degenerative disc disease and diabetes. (Doc. 10-3 at 15) The ALJ noted Plaintiff "also alleged disability partially due to acute necrotizing fasciitis" and "testified that her most significant impairment at present is depression." (*Id.* at 15-16) However, the ALJ found these were not severe impairments prior to Plaintiff's date last insured. (*Id.*) According to Plaintiff, "The ALJ's method of making these determination[s] is flawed, as he did so without benefit of any medical opinions." (Doc. 19 at 1) She argues that "[t]he ALJ should have contacted Plaintiff's treating sources in order to seek an opinion as to whether any of these impairments related back to a time before the [date last insured]." (*Id.*)

### 1. Duty to develop the record

A claimant bears the burden to provide medical evidence that supports the existence of a medically determinable impairment. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *see also Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) ("At all times, the burden is on the claimant to establish her entitlement to disability insurance benefits"). As the Supreme Court explained, it is "not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." *Bowen*, 482 U.S. at 146 n.5. On the other hand, the law is well-established in the Ninth Circuit that the ALJ has a duty "to fully and fairly develop the record and to assure the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). The Ninth Circuit explained:

> The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered. This duty extends to the represented as well as to the unrepresented claimant. When the claimant is unrepresented, however, the ALJ must be especially diligent in exploring for all the relevant facts ... The

9

ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests.

*Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations and quotation marks omitted). However, the duty is triggered only in limited circumstances. 20 C.F.R § 416.912(d)-(f) (recognizing a duty on the agency to develop medical history, re-contact medical sources, and arrange a consultative examination if the evidence received is inadequate for a disability determination). Accordingly, the duty to develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2201); *see also Tonapetyan,* 242 F.3d at 1150 ("[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry").

Plaintiff appears to assert that the record was inadequate for the ALJ to determine whether her necrotizing fasciitis and depression existed prior to her date last insured, by arguing the ALJ should have contacted her treating physicians to determine "whether… these impairments related back to a time before the DLI." (Doc. 19 at 2) Significantly, however, Plaintiff fails to meet the burden to show that the record was inadequate for the ALJ to reach a conclusion.

        *a.     Necrotizing fasciitis*

As the ALJ observed, "treatment notes from the claimant's February 2013 hospitalization note that she reported feeling well until approximately two weeks prior to her admission when she felt flu-like symptoms with achy pain in her lower abdomen." (Doc. 10-3 at 16, citing Ex. 1F/43 [Doc. 10-10 at 25]) The ALJ determined, "this would place the onset of symptoms at about February 2, 2013." (*Id.*) Notably, the hospital notes to which the ALJ referred, dated February 24, 2013, are more specific:

> She was feeling well until approximately 2 weeks prior to her admission when she felt flu-like symptoms with achy pain in her lower abdomen. She had a large pannus, so she did not really see anything going on with her skin, but she did not lift the pannus to look at her skin. Her symptoms progressed to significant pain in the vaginal area and eventually she sought care on the (sic) February 14.

(Doc. 10-10 at 25) Indeed, this was consistent with treatment notes upon Plaintiff's admission to Mercy hospital, which indicated:

> Reportedly on and off for the past 2 weeks she has had complaint of a left vaginal labial distress and pain. However, her husband's dog recently died and she did not want to

10

> upset her husband by drawing attention to herself and decided to let this go. Until the 14th of February where her symptomolgy, in fact, worsened and she decided to go the emergency room.

(Doc. 10-14 at 72) Similarly, treatment notes from Mark Twain Medical Center indicated Plaintiff's "history begins in February 2013 when she suffered with necrotizing fasciitis." (Doc. 10-17 at 87)

Thus, the medical record included sufficient information for the ALJ to determine that Plaintiff was first treated for necrotizing fasciitis beginning February 14, 2013, and that the onset of symptoms began in early February—more than a month after Plaintiff's date last insured. Because the record before the ALJ was not inadequate, the ALJ's duty to further develop the record was not triggered. *See Thomas v. Barnhart*, 278 F.3d 947, 978 (9th Cir. 2002) (duty not triggered when the medical record was adequate to make a disability determination); *Mayes*, 267 F.3d at 459-60.

### b. *Depression and anxiety*

The ALJ noted that in November 2013, Plaintiff "was taking Ativan for anxiety, and her doctor then added Celexa." (Doc. 10-3 at 16) The ALJ observed there was "no evidence of counseling in the record, and the claimant testified that she missed her first scheduled appointment the day before the hearing." (*Id.*) The ALJ found "the record does not establish that the claimant was diagnosed with a mental impairment prior to the date last insured." (*Id.*) Indeed, Plaintiff identifies no evidence that she was diagnosed with depression or anxiety prior to her date last insured.

As the ALJ observed, Plaintiff told Dr. Washington that "her depression became much more severe after she was diagnosed with necrotizing fasciitis in February 2013, that is, after the date last insured." (Doc. 10-3 at 18, citing Exh. 4F/1 [Doc. 10-14 at 83]) Thus, the record was not inadequate for the ALJ to determine when Plaintiff believed her mental impairments became severe, and "the record does not establish that the claimant was diagnosed with a mental impairment prior to the date last insured." (*See id.* at 16) Therefore, the ALJ did not have a duty to develop the record regarding Plaintiff's depression and anxiety. *See Thomas*, 278 F.3d at 978; *Mayes*, 267 F.3d at 459-60.

### 2. Severity of Plaintiff's depression and anxiety

An impairment, or combination thereof, is "not severe" if the evidence establishes that it has "no more than a minimal effect on an individual's ability to do work." *Smolen*, 80 F.3d at 1290. Although the ALJ found Plaintiff's mental impairments were not medically determinable impairments

prior to her date last insured, the ALJ also determined: "Even if the claimant's alleged mental impairments of anxiety and depression are considered medically determinable impairments, they did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and were therefore nonsevere." (Doc. 10-3 at 16)

In making this finding, the ALJ considered the "paragraph B" criteria set forth in 20 C.F.R., Pt. 404, Subpart P, App. 1, which are used to evaluate the mental impairments of a claimant, and include: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *See id.* The Regulations inform claimants:

> If we rate the degrees of your limitation as "none" or "mild," we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities.

20 C.F.R. § 404.1520a(d)(1). The ALJ found that, through the date last insured, Plaintiff had no limitation with activities of daily living; no limitation with social functioning; no limitation with concentration, persistence, or pace; and no episodes of decompensation during the relevant period. (Doc. 10-3 at 16-17) Consequently, the ALJ concluded Plaintiff's mental impairment "was nonsevere." (*Id.* at 17)

Importantly, the Ninth Circuit determined that "[t]he mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678 (9th Cir. 1993). In other words, a medical diagnosis alone does not make an impairment qualify as "severe." Although Plaintiff identifies evidence that she was diagnosed with depression and anxiety in 2013, "the existence of such evidence does not undermine the ALJ's findings." *See Gallardo v. Astrue*, 2008 U.S. Dist. LEXIS 84059, at \*30 (E.D. Cal. Sept. 10, 2008). As the ALJ determined, Plaintiff fails to identify evidence supporting a conclusion that a mental impairment caused significant functional limitations prior to her date last insured.

Previously, this Court explained: "The role of this Court is not to second guess the ALJ and reevaluate the evidence, but rather it must determine whether the decision is supported by substantial evidence and free of legal error." *Gallardo*, 2008 U.S. Dist. LEXIS 84059 at \*30; *see also German v. Comm'r of Soc. Sec.*, 2011 U.S. Dist. LEXIS 25691 at \*11-12 (E.D. Cal. Mar. 14, 2011) ("[i]t is not for this court to reevaluate the evidence"). The term "substantial evidence" "describes a quality of

evidence ... intended to indicate that the evidence that is inconsistent with the opinion need not prove by a preponderance that the opinion is wrong." SSR 96-2p, 1996 SSR LEXIS 9 at *8[1]. "It need only be such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion." *Id.*

The decision of the ALJ is supported by the findings of Dr. Washington, who determined Plaintiff had a "fair" memory and "good" attention and concentration, even months after she reported her depression became more severe. (*See* Doc. 10-3 at 17; Doc. 10-14 at 84) Dr. Washington indicated these conclusions were supported by the findings that Plaintiff "was able to remember three words immediately and two of three words after five minutes" and "recall 6 digits forwards and 5 digits backwards." (Doc. 10-14 at 85) These tests are commonly used by medical professionals to determine the effect of a claimant's alleged mental impairments. *See, e.g., Louis v. Astrue*, 2011 U.S. Dist. LEXIS 89834 at *17 (E.D. Cal. Aug. 12, 2011) (the consultative medical examiner noted the claimants "[m]emory recall was three of three words immediately and two of three words after five minutes"). When the opinions of a physician, such as Dr. Washington, "rest[] on independent examination," the opinions constitute substantial evidence. *Tonapetyan*, 242 F.3d at 1149; *see also Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (when an examining physician provides independent clinical findings, such findings are substantial evidence).

Likewise, the ALJ's step two determination is supported by the opinions of the non-examining physicians— Drs. Hawkins and Zukowski— who reviewed the medical record and opined Plaintiff's mental impairments were not severe through her date last insured. (Doc. 10-14 at 13, 30) Because these opinions are consistent with the findings of Dr. Washington, the opinions are also substantial evidence in support of the ALJ's decision. *See Tonapetyan*, 242 F.3d at 1149; *Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995) (opinions of non-examining physicians "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it").

**B.    The ALJ's Evaluation of the Medical Record**

---

[1] Social Security Rulings (SSR) are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). Although they do not have the force of law, the Ninth Circuit gives the Rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989); *see also Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006) ("SSRs reflect the official interpretation of the [SSA] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations").

13

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). In general, the opinion of a treating physician is afforded the greatest weight but it is not binding on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Further, an examining physician's opinion is given more weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

A physician's opinion is not binding upon the ALJ, and may be discounted whether or not another physician contradicts the opinion. *Magallanes*, 881 F.2d at 751. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only by identifying "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*, 81 F.3d at 830. When there is conflicting evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the conflict must be upheld by the Court when there is "more than one rational interpretation of the evidence." *Id.; see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ").

Plaintiff contends the ALJ improperly rejected the opinions offered by Dr. Michnowska, a treating physician. (Doc. 19 at 3) Plaintiff contends: "The ALJ's rejected this important opinion, merely because the doctor is "not a specialist in psychiatry or psychology," which is contrary to controlling 9th Circuit case law." (*Id.*, citing *Sprague v. Bowen*, 812 F.2d 1226 (9th Cir. 1987))

As Plaintiff observes, in *Sprague*, "the Ninth Circuit held that general practitioners are fully qualified to provide opinions regarding the limitations arising from the mental impairments of their patients." (Doc. 19 at 3) The Court observed that "it is well established that primary care physicians (those in family or general practice) 'identify and treat the majority of American's psychiatric

disorders.'" *Sprague*, 812 at 1232 (citation omitted). It is not clear that Dr. Michnowska was a "primary care physician," because she treated Plaintiff only when she was hospitalized at Mark Twain. Indeed, the treatment notes from Dr. Michnowska indicate that when Plaintiff was discharged from Mark Twain, she was instructed by Dr. Michnowska "to establish care with a primary care provider." (Doc. 10-12 at 5)

Regardless, the ALJ did not reject the opinion of Dr. Michnowska merely because she was "not a specialist in psychiatry or psychology," contrary to Plaintiff's assertion. Rather, the ALJ gave the opinion "little weight" based, in part, due to the lack of specialty in psychiatry or psychology. (Doc. 10-3 at 18) Under the Regulations, a physician's specialization is a factor the ALJ is directed to consider "in deciding the weight [to] give to any medical opinion." 20 C.F.R. § 404.1527(c). Specifically, the Regulations indicate: "We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." *Id.*, §§ 404.1527(c)(5), 416.927(c)(5). Thus, the ALJ was entitled to give less weight to the opinion of Dr. Michnowska on these grounds.

Moreover, the ALJ indicated he also gave less weight to the opinion Dr. Michnowska because the limitations were vague; unsupported by the record; and appeared to be based upon Plaintiff's subjective statements, which the ALJ found lacked credibility. (Doc. 10-3 at 18, 20) These reasons were not challenged by Plaintiff.[2] Indeed, the Ninth Circuit determined these are specific and legitimate for giving less weight to the opinion of a physician. *See, e.g.*, *King v. Comm'r of Soc. Sec. Admin*, 475 Fed. App'x. 209, 210 (9th Cir. 2012) (holding an ALJ may reject limitations that "were too vague to be useful"); *Mendoza v. Astrue*, 371 Fed. Appx. 829, 831-32 (9th Cir. 2010); *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986) (holding an ALJ may reject limitations not supported by the record); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (an ALJ may discount a treating physician opinion that is based on a claimant's "subjective characterization of her

---

[2] Because Plaintiff did not challenge the additional reasons identified by the ALJ for giving less weight to the opinions of Dr. Michnowska, she has waived any argument regarding the other reasons. *See Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n.8 (9th Cir. 2009) ("arguments not raised by a party in an opening brief are waived"); *see also Pendley v. Colvin*, 2016 U.S. Dist. LEXIS 53470 at *22-23 (Dist. Or. Mar. 2, 2016) (noting that the plaintiff "challenge[d] some, but not all, of the reasons provided by the ALJ" and "any argument against those-non challenged reasons [was] deemed waived")

15

symptoms," which the ALJ found not entirely credible). Accordingly, the ALJ identified legally sufficient reasons to give less weight to the opinion of Dr. Michnowska.

**C.     The Residual Functional Capacity**

Plaintiff's contends the ALJ erred in determining her residual functional capacity. (Doc. 19 at 3) A claimant's residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating a RFC, the ALJ weighs medical and other source opinions, as well as the claimant's credibility. *See, e.g., Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009). Further, the ALJ must consider "all of [a claimant's] medically determinable impairments"—whether severe or not—when assessing a RFC. 20 C.F.R. §§ 405.1545(a)(2), 416.945(a)(2).

In this case, Plaintiff contends the ALJ failed to incorporate limitations related to degenerative disc disease or "discuss[]any of the common complications (such as peripheral neuropathy or eye problems) attendant to diabetes, also found to be a severe impairment," in formulating the RFC. (Doc. 19 at 3) In addition, Plaintiff asserts that "[t]he findings of Drs. Michnowska and Sharma provided limitation to Plaintiffs physical ability which did not find their way to the RFC." (*Id.*) On the other hand, Defendant argues "the ALJ's RFC assessment finding Plaintiff remained capable of performing light work is supported by substantial evidence." (Doc. 21 at 12)

1.     Incorporation of limitations identified by physicians

As an initial matter, as discussed above, the ALJ properly rejected the limitations identified by Dr. Michnowska. In addition, Plaintiff fails to identify any limitations identified by Dr. Sharma that were not incorporated in the residual functional capacity ("RFC"). Dr. Sharma determined Plaintiff did not have neuropathy or vision problems. (Doc. 10-14 at 93, 95) Dr. Sharma concluded:

> Based upon today's physical examination and observations, she has limitation in lifting to 10 pounds frequently and 20 pounds occasionally. Standing and walking limited to 6 hours per day with normal breaks. Bending and stooping should be done occasionally. Sitting limited to 6 hours per day. No limitation in holding or feeling objects. No limitation in speech, hearing, or vision.

(Doc. 10-14 at 95) The ALJ indicated he gave "great weight" to this opinion, in evaluating Plaintiff's

RFC. (Doc. 10-3 at 20) Indeed, the ALJ adopted the limitations identified by Dr. Sharma, concluding Plaintiff "could, with normal breaks, stand and walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday," with occasional postural activities such as climbing ramps and stairs, balancing, stooping, crouching, kneeling, and crawling. (*Id.* at 19)

Furthermore, Plaintiff fails to identify the limitations that she believes should have been incorporated into the RFC by the ALJ. Previously, the Ninth Circuit "reject[ed] any invitation to find that the ALJ failed to account for [the claimant's] injuries in some unspecified way" where the claimant failed to detail what other physical limitations follow from the evidence of his knee and should injuries, besides the limitations already listed in the RFC." *See Valentine v. Astrue,* 574 F.3d 685, 692 n.2 (9th Cir. 2009). Likewise, district courts throughout the Ninth Circuit determined failure to identify specific limitations that should have been incorporated into an RFC is fatal to a claimant's challenge of the ALJ's RFC findings. *See, e.g.*, *Juarez v. Colvin*, 2014 U.S. Dist. LEXIS 37745 at *15 (CD Cal. Mar. 20, 2014) (rejecting an argument that the ALJ erred in evaluating the claimant's limitations where she had "not specified or proffered evidence of any additional limitations from the arthritis that the ALJ failed to consider"); *Hansen v. Berryhill,* 2018 U.S. Dist. LEXIS 19489 (W.D. Wash. Feb. 6, 2018) ("Although Plaintiff argues that the ALJ erred in failing to account for the limitations caused by his ADHD in the RFC assessment, he does not identify which limitations were erroneously omitted, and has thus failed to state an allegation of error in the RFC assessment with the requisite specificity"); *Thomas v. Comm'r of SSA*, 2015 U.S. Dist. LEXIS 99338 at *21 (Dist. Or. Jul 30, 2015) ("Plaintiff does not cite to evidence of physical limitations stemming from these impairments beyond those already listed in his RFC. Without more specific information on how these conditions hinder Plaintiff, the Court declines to find the ALJ failed to account for Plaintiff's limitations").

Accordingly, the Court is unable to speculate as to the limitations Plaintiff believes the ALJ should have incorporated into the RFC. *See Valentine,* 574 F.3d at 692 n.2; *see also Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (noting the Court "has repeatedly admonished that [it] cannot 'manufacture arguments for an appellant'")

2. Substantial evidence supports the RFC

As noted above, the opinions of both examining physicians and non-examining physicians may

17

be substantial evidence to support an ALJ's determination of an RFC. *See Tonapetyan*, 242 F.3d at 1149; *Orn*, 495 F.3d at 632. Here, the ALJ gave "great weight" to the opinions of Drs. Sharma, Pancho, and Dipsia. (Doc. 10-3 at 20, 21)

Dr. Sharma examined Plaintiff on August 15, 2013, at which time he tested her range of motion and strength. (Doc. 10-14 at 91- 95) Dr. Sharma rendered his opinion regarding Plaintiff's physical limitations "[b]ased upon [the] physical examination and observations." (Doc. 10-14 at 91) Because his conclusion that Plaintiff could perform light work with postural limitations rested upon an "independent examination" of Plaintiff, the opinions constitute substantial evidence in support of the RFC by the ALJ. *See Tonapetyan*, 242 F.3d at 1149.

In addition, the RFC of the ALJ is supported by the opinions of Drs. Pancho and Dipsia, who opined Plaintiff had the ability to perform light work with additional postural limitations that were incorporated by the ALJ in the RFC. (*Compare* Doc. 10-4 at 14-15, 30 *with* Doc. 10-3 at 19) Because the limitations identified by Drs. Pancho and Dipsia were consistent with the findings of Dr. Sharma, they are also substantial evidence in support of the RFC. *See See Tonapetyan*, 242 F.3d at 1149; *Andrews*, 53 F.3d at 1042.

**CONCLUSION AND ORDER**

For the reasons set for above, the Court finds the ALJ applied the proper legal standards and his findings related to Plaintiff's physical and mental impairments are supported by substantial evidence. Accordingly, the Court **ORDERS**:

1. The decision of the Commissioner of Social Security is **AFFIRMED**; and
2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Defendant, the Commissioner of Social Security, and against Plaintiff Shon Kim Carlson.

IT IS SO ORDERED.

Dated: __March 26, 2018__          __/s/ Jennifer L. Thurston__
UNITED STATES MAGISTRATE JUDGE